IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| HOWARD LAWRENCE, | CASE NO. 1:22-CV-02088-JPC |
| Petitioner, | JUDGE J. PHILIP CALABRESE |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN KIM HENDERSON, | **REPORT AND RECOMMENDATION** |
| Respondent. |  |

On November 18, 2022, Petitioner Howard Lawrence, a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petition under § 2254(a). On November 30, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. (Non-document entry of Nov. 30, 2022). On March 3, 2023, Respondent Kim Henderson, in her official capacity as Warden of the Toledo Correctional Institution (hereinafter the State), filed a motion to dismiss the petition as untimely. (ECF #8). Mr. Lawrence did not respond to the State's motion.

For the reasons discussed below, I recommend the District Court **DISMISS** the petition as untimely.

1

PROCEDURAL HISTORY

**A.      State Court Factual Findings**

The Eighth District Court of Appeals, Cuyahoga County, Ohio, made the following

binding factual findings on direct appeal. These findings are presumed correct, and Mr. Lawrence

may rebut the presumption of correctness only with clear and convincing evidence. 28 U.S.C.

§ 2254(e)(1).

> [¶ 2] In January of 2013, the Cuyahoga Grand Jury returned an indictment charging Lawrence with two counts of aggravated murder with one- and three-year firearm specifications (Counts 1 and 2); one count of aggravated robbery with one- and three-year firearm specifications, notice of prior conviction, and repeat violent offender specifications (Count 3); one count of murder with one- and three-year firearm specifications (Count 4); three counts of felonious assault with one- and three-year firearm specifications, notice of prior conviction, and repeat violent offender specifications (Counts 5–7); one count of kidnapping with one- and three-year firearm specifications, notice of prior conviction, and repeat violent offender specifications (Count 8); and one count of having a weapon while under disability (Count 9). This indictment stemmed from a shooting incident that occurred on December 15, 2012.

> [¶ 3] Lawrence waived his right to a jury trial as to Count 9 for having weapons while under disability as well as the notice of prior conviction and repeat violent offender specifications connected to Counts 3, 5, 6, 7 and 8. A jury tried the remainder of the case. On the third day of trial, and in response to information provided by the Cleveland Police Department, the court issued an order requiring that anyone wishing to enter the courtroom must state their name, present a valid form of picture identification and be amenable to having their picture taken prior to entering the courtroom. The court also ordered additional screenings for weapons at the entrance to the courtroom. The Cleveland Police Department informed the court that members of the Heartless Felons, a well known criminal gang, would be attending the trial to try and intimidate witnesses.

> [¶ 4] The sole eyewitness in this case was Steven Thomas. Thomas testified that on the evening of the shooting, he had smoked five marijuana blunts and drank approximately two alcoholic beverages, and admitted that he was impaired.

> [¶ 5] Thomas arrived at the home of Uriah Howard, which had been converted into an after-hours spot where people would drink, party and shoot dice. Thomas testified that Lawrence arrived at the residence on the night of the incident with the victim

2

Deangelo Chandler. He stated that there were probably 14 to 16 people at the house. Over the course of the evening Thomas observed Lawrence shooting dice with a person named "Roy." Thomas and Roy were acquaintances; however, he was not acquainted with Lawrence until the evening in question.

[¶ 6] Thomas testified that the dice game went on for about 40 minutes. When the game was finished, Thomas observed Lawrence turn to his friend Chandler and asked for his "strap." Thomas stated that Chandler initially thought Lawrence wanted his cell phone, but Lawrence clarified that he wanted Chandler's firearm. Thomas observed Chandler hand Lawrence his weapon, saw Lawrence point the gun at Roy, demand the return of the money that he had lost shooting dice and then fire the gun. Thomas testified that as soon as Lawrence fired the weapon, Thomas took cover behind the bar. Thomas stated that a few moments passed and he heard two more shots fired then saw Lawrence running towards the kitchen of the house away from the room where the shooting occurred. Thomas stated that he heard Chandler say, "you shot me." Thomas could not tell to whom Chandler's statement was directed.

[¶ 7] Thomas and several bystanders helped Chandler to Uriah Howard's car and they then drove him to St. Vincent's Charity Hospital. Chandler died at the hospital from a gunshot wound.

[¶ 8] The jury convicted Lawrence of aggravated robbery with one- and three-year firearm specifications as charged in Count 3 and felonious assault with one- and three-year firearm specifications as charged in Counts 5 through 7 of the indictment. The court found Lawrence guilty of having weapons while under disability as charged in Count 9 and guilty of the notice of prior conviction and repeat violent offender specifications as charged in Counts 3, 5, 6 and 7. The jury found Lawrence not guilty of the remaining counts.

[¶ 9] At his sentencing hearing, the court noted that Counts 3, 6, 7, 8 and 9 as well as their attendant specifications merged for purposes of sentencing with the state electing to sentence on Count 3, aggravated robbery. The court then sentenced Lawrence on that charge to a total prison term of 21 years: 11 years on the base charge, three years on the firearm specification and 7 years on the repeat violent offender specification with the specifications to be served prior to and consecutive with the base term of 11 years. On the remaining charge of felonious assault (Count 5), the court sentenced Lawrence to 21 years in prison: eight years on the base charge, three years for the firearm specification and ten years on the repeat violent offender specification with the specifications to be served prior to and consecutive with the

3

base term of eight years. The court ordered the sentences on Counts 3 and 5 to be
served concurrent for a total prison term of 21 years.

*State v. Lawrence*, Nos. 100371, 100387, 2014 WL 5499084, at *1-2 (Ohio Ct. App. Oct. 30, 2014).

**B.    State Court Conviction**

On January 22, 2013, a Cuyahoga County Grand Jury indicted Mr. Lawrence on two

counts of aggravated murder with one- and three-year firearm specifications (Counts 1 and 2); one

count of aggravated robbery with one- and three-year firearm specifications, notice of prior

conviction, and repeat violent offender (RVO) specification (Count 3); one count of murder with

one- and three-year firearm specifications (Count 4); three counts of aggravated felonious assault

with one- and three-year firearm specifications, notification of prior conviction, and RVO

specifications (Counts 5, 6, 7); one count of kidnapping with one- and three-year firearm

specifications, notice of prior conviction, and RVO specification (Count 8); and one count of

having weapons under disability (Count 9). (State Court Record, ECF #8-1, PageID 98-106). On

January 25, 2013, Mr. Lawrence pled not guilty to all counts. (*Id.* at PageID 107).

Between January 30 and April 11, 2013, Mr. Lawrence requested continuances for

additional time to review discovery and file a motion to appoint an investigator to assist the

defense. (*Id.* at PageID 108-13). On June 19, 2013, Mr. Lawrence, though represented by counsel,

filed several *pro se* motions, including a motion seeking dismissal for lack of speedy trial, an

objection to the use of prior conviction evidence, an objection to the "surplusage to the above

enumerated case (overindictment alert)," and an objection to the ratification of the

commencement of the action. (*Id.* at PageID 114-20).

On June 26 and 28, 2013, Mr. Lawrence submitted additional *pro se* filings, including an

affidavit of fact/writ of discovery, a notice of rescission of plea of not guilty to all charges, and a

notice to demand courts to state findings of facts of motion to dismiss for lack of speedy trial. (*Id.* at PageID 121-31). At a pretrial on July 17, 2013, the trial court reviewed Mr. Lawrence's *pro se* motions with defense counsel, and counsel then discussed the motions with Mr. Lawrence. (*Id.* at PageID 132).

Two days before trial, Mr. Lawrence filed a *pro se* objection to holder placement tolling R.C. 2945.12. (*Id.* at PageID 133).

On July 24, 2013, Mr. Lawrence voluntarily waived his right to a jury trial for Count 9, and for the notice of prior conviction specifications and repeat violent offender specifications in Counts 3, 5, 6, 7, and 8. (*Id.* at PageID 136).

The State filed a response to Mr. Lawrence's *pro se* motion to demand dismissal for lack of speedy trial. (*Id.* at PageID 137-43).

On July 29, 2013, at trial, for security related measures, the court ordered all spectators to state their name and show valid identification, agree to turn off their cell phones, submit to security "wanding" if requested, and have their picture taken when entering the courtroom. (*Id.* at PageID 159). After the State rested its case, the court heard and denied Mr. Lawrence's Criminal Rule 29 motion to dismiss. (*Id.* at PageID 160). Thereafter, the defense rested. (*Id.*).

On August 2, 2013, the jury found Mr. Lawrence guilty on Counts 3, 5, 6, 7 and the attached one- and three-year specifications; not guilty on Counts 1, 2, 4 and the attached one- and three-year specifications; and not guilty on Count 8 and the attached one- and three-year specifications, notice of prior conviction specification, and repeat violent offender specification.

(*Id.* at PageID 161). Mr. Lawrence filed a *pro se* motion for acquittal under Criminal Rule 29(c) and requested a finding of facts. (*Id.* at PageID 163).

On August 13, 2013, the trial court found Mr. Lawrence guilty as to the notice of prior conviction specifications and repeat violent offender specifications in Counts 3, 5, 6, and 7, and guilty on Count 9. (*Id.* at PageID 165). The trial court proceeded to sentencing and merged Counts 3, 6, 7, 8, and 9 and all related specifications; the State elected to proceed on Count 3. (*Id.* at PageID 166). As to Count 3, the court sentenced Mr. Lawrence to eleven years for the felony, three years for the firearm specification, and seven years for the repeat violent offender specification, for a total of twenty-one years. (*Id.* at PageID 167). On Count 5, the court imposed eight years for the felony, three years for the firearm specification, and ten years for the repeat violent offender specification, for a total of twenty-one years. (*Id.*). The court ordered Mr. Lawrence to serve his sentences on Counts 3 and 5 concurrently and imposed five years of mandatory post-release control on Count 3 and three years on Count 5. (*Id.*).

C.      **Direct Appeal**

On September 9, 2013, the State filed a timely notice of appeal with the Eighth District. (ECF #8-1 at PageID 168-75). Mr. Lawrence, through counsel, also timely appealed the trial court's decision to the Eighth District. (*Id.* at PageID 176-81). The Eighth District consolidated the cases. (*Id.* at PageID 182).

The State raised one assignment of error in its merit brief:

> The trial court committed reversible error by failing to impose two consecutive three-year prison terms for firearms specifications associated with Defendant's aggravated robbery and felonious assault convictions as required by R.C. 2929.14(B)(1)(g).

(*Id.* at PageID 184).

Mr. Lawrence, through counsel, raised three assignments of error, as follows:

1.    The trial court committed error when overruled Mr. Lawrence's motion for mistrial.

2.    The trial court committed error when, without first holding a hearing on the record, it determined to preclude access to the courtroom for any spectators who would not produce "valid picture identification or other credible identification" and who was unwilling to accept the possibility of having their pictures taken when entering the courtroom.

3.    The verdicts finding Mr. Lawrence guilty were not supported by the manifest weight of the evidence.

(*Id.* at PageID 194).

On May 16, 2014, Mr. Lawrence filed a *pro se* motion for leave to file a supplemental brief

identifying four additional assignments of error, as follows:

4.    The trial court committed error when denying Mr. Lawrence's Motion to Dismiss for lack of speedy trial.

5.    The trial court committed error when ruling [on] Mr. Lawrence's Motion objecting to the usage of notice of prior conviction as moot sentencing Mr. Lawrence under the R.C. 2941.149(A) of Repeat Violent Offender Specification.

6.    The trial court committed error when denying Mr. Lawrence's Motion for Acquittal for the remaining charges after the jury verdicts were read.

7.    The trial court committed error when allowing the jury to become aware of Mr. Lawrence's notice of prior conviction specification under R.C. 2929.13(F)(6) and R.C. 2941.149(A) repeat violent offender specification after Mr. Lawrence signed a jury waiver as to the prior and repeat violent offender specification(s) and, as relevant here, Count 9 – having a weapon under disability.

(*Id.* at PageID 217).

The Eighth District granted Mr. Lawrence's motion for leave to file his supplemental brief.

(*Id.* at PageID 249).

7

On October 30, 2014, the Eighth District sustained the State's sole assigned error and remanded for correction under Ohio Rev. Code § 2929.14(B)(1)(g) and Ohio Crim. R. 36, overruled the assignments of error Mr. Lawrence's appellate counsel presented, and did not address the assignments of error identified in Mr. Lawrence's *pro se* supplemental brief. (*Id.* at PageID 275-89).

On November 14, 2014, Mr. Lawrence filed an Affidavit of Indigency with the Supreme Court of Ohio requesting waiver of the filing fee and security deposit. (*Id.* at PageID 300). On November 17, 2014, the Deputy Clerk of the Supreme Court of Ohio returned Mr. Lawrence's request for an extension of time to perfect his appeal, citing the general prohibition of extensions under Rule 3.03(B)(1) of the Supreme Court of Ohio Rules of Practice. (*Id.* at PageID 302). On December 12, 2014, the Clerk's Office informed Mr. Lawrence that his notice of appeal was not filed because he did not submit a memorandum in support of jurisdiction and did not pay the filing fee or submit a notarized affidavit of indigence in lieu of the fee. (*Id.* at PageID 303). The Clerk's Office also informed Mr. Lawrence of the December 15, 2014 deadline for a timely appeal of the Eighth District's October 30, 2014 decision. (*Id.*). On December 30, 2014, Mr. Lawrence filed a notice of appeal, motion for leave to file a delayed appeal, and an affidavit in support identifying the reason for delay. (*Id.* at PageID 291-99). On February 18, 2015, the Supreme Court of Ohio denied Mr. Lawrence's motion for delayed appeal and dismissed the case. (*Id.* at PageID 320).

### D.    Application to Reopen Direct Appeal Under Ohio App. R. 26(B)

On February 9, 2015, Mr. Lawrence filed a motion in the Eighth District "to request extension to file ineffective assistance of counsel pursuant to 26(B)" because he had not yet

received copies of the transcript record. (ECF #8-1 at PageID 321). On February 11, the Eighth

District denied his request. (*Id.* at PageID 323).

### E.  Sentencing on Remand

On July 5, 2016, the trial court modified Mr. Lawrence's sentence to reflect that the three-

year gun specifications applicable to Counts 3 and 5 are to run consecutively to each other,

ultimately imposing a 24-year sentence. (ECF #8-1 at PageID 324). Mr. Lawrence did not file a

timely notice of appeal within thirty days of the judgment entry. *See* Ohio App. R. 4(A)(1).

On January 18, 2018, through counsel, Mr. Lawrence filed an untimely notice of appeal

and a motion to file a delayed notice of appeal with the Eighth District. (*Id.* at PageID 327-39). The

Eighth District denied the motion and dismissed the appeal. (*Id.* at PageID 387). Mr. Lawrence did

not appeal to the Supreme Court of Ohio.

### F.  Motion for Written Determination Addressing Supplemental Errors

On November 7, 2016, two years after the Eighth District ruled on the direct appeal, Mr.

Lawrence filed a motion for the appellate court to provide a "written determination" on the four

assignments of error he presented in his *pro se* supplemental brief submitted on May 16, 2014.

(ECF #8-1 at PageID 340-46). Noting the case was journalized on October 30, 2014, the Eighth

District denied the motion as moot on November 10, 2016. (*Id.* at PageID 389). Mr. Lawrence did

not pursue further appellate review.

### G.  Motion for New Trial

On June 23, 2017, Mr. Lawrence, *pro se*, filed a motion for leave to file a motion for new

trial based on newly discovered evidence. (ECF #8-1 at PageID 390-95). The trial court denied the

motion. (*Id.* at PageID 457-58).

**H.      Application to Reopen Direct Appeal Under Ohio App. R. 26(B)**

On November 1, 2018, Mr. Lawrence, *pro se*, filed an application for reopening his direct appeal alleging in two assignments of error that his appellate counsel was ineffective:

1.      Appellate counsel's failure to ensure that this Court decide[d] the four pending supplemental assignments of error, in compliance with App. R. 12(A)(1)(c) as mandated by State v. Evans, 113 Ohio St.3d 100, 105, 2007-Ohio-861, amounts to ineffective assistance as his deficient performance caused the forfeiture of his client's four supplemental assignments of error, thus resulting in prejudice.

2.      Appellate counsel rendered ineffective assistance by failing to raise a speedy-trial violation claim on his accord.

(ECF #8-1 at PageID 459-69). On January 8, 2019, the Eighth District denied Mr. Lawrence's application because it was untimely and he did not establish good cause for the delay. (*Id.* at PageID 475-83).

On February 11, 2019, Mr. Lawrence filed a notice of appeal to the Supreme Court of Ohio. (*Id.* at PageID 484-85). In his memorandum in support of jurisdiction, Mr. Lawrence asserted the following propositions of law:

1.      The ninety-day time line under App. R. 26(B) does not begin to run where the court of appeals' decision does not constitute a final appealable order.

2.      Under the doctrine of *stare decisis*, the court of appeals is bound by its precedent in State v. Young, 2015-Ohio-2862, which recognized an exception for hybrid representation.

3.      Appellate counsel rendered ineffective assistance by failing to raise the violation of Lawrence's constitutional right to a speedy trial as an assignment of error on direct appeal.

4.      Appellate counsel's failure to ensure that the court of appeals decide[d] his client's supplemental brief, and failure to consult with his client about the court of appeals['] neglect in not deciding the supplemental brief, amounts to ineffective assistance.

5.    Appellant's constitutional rights to due process and equal protection were violated where the court of appeals constructively deprived appellant of his first appeal as of right and/or meaningful appellate review.

(*Id.* at PageID 486-501). On May 1, 2019, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. (*Id.* at PageID 511).

## I.    Petition for Postconviction Relief

On April 14, 2020, Mr. Lawrence filed a *pro se* motion to vacate a void judgment in the trial court, claiming his right to a speedy trial was violated. (ECF #8-1 at PageID 512-15). The trial court denied the motion on August 21, 2020. (*Id.* at PageID 525).

On September 17, 2020, Mr. Lawrence, through counsel, filed a timely notice of appeal to the Eighth District asserting the trial court erred by denying the motion to vacate a void judgment, again asserting the alleged violation of his speedy trial right. (*Id.* at PageID 526-33). On June 24, 2021, the Eighth District classified the motion as a petition for postconviction relief and overruled the sole assignment of error. (*Id.* at PageID 561-67). Specifically, the Eighth District determined that "res judicata precludes him from raising his speedy trial claim" because he did not raise it on direct appeal. (*Id.* at PageID 566).

On August 9, 2021, Mr. Lawrence, through counsel, filed a notice of appeal to the Supreme Court of Ohio. (*Id.* at PageID 568-69). In his memorandum in support of jurisdiction, Mr. Lawrence asserted the following proposition of law:

A speedy trial violation denies a criminal defendant of their right to due process under the Sixth Amendment, and Fifth and Fourteenth Amendments, and divests a trial court of jurisdiction rendering a subsequent judgment of conviction or sentence void.

(*Id.* at PageID 572). The Supreme Court of Ohio declined to accept jurisdiction of the appeal. (*Id.* at PageID 581).

11

J.      Application to Reopen Direct Appeal Under Ohio App. R. 26(B)

On August 9, 2021, Mr. Lawrence, *pro se*, filed an application under Ohio App. R. 26(B) in the Eighth District, seeking to reopen an appeal from his postconviction motion to vacate a void judgment. (ECF #8-1 at PageID 582-88). In this application, Mr. Lawrence argued that the speedy trial claim he raised in his motion to vacate was not barred by res judicata because he raised it in his *pro se* supplemental brief on direct appeal and in his first application for reopening. (*Id.* at PageID 582-83). On September 17, 2021, the Eighth District denied the application because App. R. 26(B) only applies to appeals from the judgment of conviction and sentence, not from motions for postconviction relief. (*Id.* at PageID 594-97).

## FEDERAL HABEAS PETITION

On October 4, 2022, Mr. Lawrence signed his habeas petition and placed it in the prison mailing system. (ECF #1). He raises eleven grounds for relief, as follows:

**Ground One**:  Lack of speedy trial.

Supporting Facts: I never had any holder of any sorts placed on me nor was there ever any proof of any holders on me produced before the courts. They assumed that because I was on parole and probation that I had to have some sort of holder on me but I didn't.

**Ground Two**: The Court erred in ruling my pretrial motion objecting to the usage of notice priors as moot.

Supporting Facts: The courts erred when ruling my motions as moot without holding any hearing to see if they held any merit.

**Ground Three**: Courts erred when denied motion for acquittal after Jury verdicts were read.

Supporting Facts: The Jury returned a mixed verdict, it was clear the Jury lost its way, the courts Had a duty to see to it that when there is a miscarriage of Justice, Justice is had.

**Ground Four**: The Trial Court [erred] when it allowed the Jury to become aware of the Charge. I signed a Jury waiver.

<u>Supporting Facts</u>: The Jury become aware of the very charged 3 specs in which I signed the Jury waiver for & oddly they found me not guilty of all the charges in the indictment except the charges & specs in which I was once previously convicted of. The very thing I signed the waiver for hoping to avoid happened.

**Ground Five**: The trial court's decision was based on an unreasonable determination when it overruled Mr. Lawrence's motion for mistrial, thereby denying Mr. Lawrence of his right to a fair trial and due process in violation of the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

**Ground Six**: A courtroom is unconstitutionally closed when some of the public are excluded without adequate justification. *Wallace v. Georgia*, 467 U.S. 39, 104, S. Ct. 2210, 81 L. Ed. 31; *Press-Enterprise Company v. Superior Court of California*, 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629.

**Ground Seven**: The verdicts finding Mr. Lawrence guilty were not supported by the manifest weight of the evidence, thereby violating the due process clause of the Fourteenth Amendment to the U.S. Constitution.

**Ground Eight**: The trial court's decision was based on an unreasonable determination when it denied Mr. Lawrence's motion to dismiss for lack of a speedy trial as provided in Section 2945.71 of the Ohio Revised Code, and the Ohio Eighth Appellate District Court's failure to rule on this state-law claim in the first instance violated Mr. Lawrence's right to process of appellate review consistent with the requirements of the Due Process and Equal Protection Clauses of the U.S. Constitution.

**Ground Nine**: The trial court's decision was based on an unreasonable determination when denying Mr. Lawrence's motion objecting to the usage of prior convictions moot, and the Ohio Eighth Appellate District Court's failure to rule on this state-law claim in the first instance violated Mr. Lawrence's right to process of appellate review consistent with the requirements of the Due Process and Equal Protection Clauses of the U.S. Constitution.

**Ground Ten**: The trial court's decision was based on an unreasonable determination when denying Mr. Lawrence's motion for acquittal for the remaining charges after the jury's verdicts were read, and the Ohio Eighth Appellate District Court's failure to rule on this state-law claim in the first instance violated Mr. Lawrence's right to process of appellate review consistent with the requirements of the Due Process and Equal Protection Clauses of the U.S. Constitution.

**Ground Eleven**: The trial court's decision was based on an unreasonable determination when allowing the jury to become aware of Mr. Lawrence's notice of prior convictions of specifications under R.C. 2929.13(F)(6) and 2941.149 repeat violent offender specifications after Mr. Lawrence signed a jury waiver as to the notice of prior convictions and repeat violent offender specifications as relevant to Count 9 Having a Weapon Under Disability, and the Ohio Eighth Appellate District Court's failure to rule on this state-law claim in the first instance violated Mr. Lawrence's right to process of appellate review consistent with the requirements of the Due Process and Equal Protection Clauses of the U.S. Constitution.

(ECF #1 at PageID 5-10; ECF #1-3 at PageID 33-34) (cleaned up).

### DISCUSSION AND ANALYSIS

The State argues Mr. Lawrence's petition is time-barred under the Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitations and thus should be dismissed. (ECF #8 at PageID 82). Mr. Lawrence did not respond to the State's motion.

Under 28 U.S.C. § 2244(d), a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the one-year limitation period in § 2244(d)(1) meets the interest in the finality of state court judgments). The limitations period is not jurisdictional; rather, it is an affirmative defense that the responding party must raise in its first responsive pleading. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see also Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Though not jurisdictional, when the State asserts it and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—i.e., equitable tolling and actual innocence—had not been satisfied).

The AEDPA's statute of limitations period runs from the latest of four dates:

      (A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

      (B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA sets strict filing deadlines to promote the finality of convictions and curb dilatory tactics. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Lawrence was resentenced on July 5, 2016. (ECF #8-1 at PageID 324). He did not appeal the resentencing entry and his time to seek direct review expired thirty days thereafter on August 4, 2016. *See* Ohio App. R. 4(A)(1). The one-year statute of limitations began to run the following day, August 5, 2016. Therefore, absent tolling, Mr. Lawrence's filing window closed on August 5, 2017.

**A.**    **Statutory Tolling**

Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled while a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending. A postconviction petition that is untimely under state law is not "properly filed." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

Before the one-year period expired, Mr. Lawrence filed two motions: (i) a November 7, 2016 request to the Eighth District seeking a "written determination" of the four errors he asserted *pro se* on direct appeal; and (ii) a June 23, 2017 request to the trial court for leave to file a motion

for a new trial. The first motion was filed to prompt the Eighth District to address his *pro se* assignments of error on direct appeal. Assuming for the sake of argument that the motion is a "properly filed application" as contemplated in § 2244(d)(2), it would toll the one-year period for just three days because the application was denied and no longer pending as of November 10, 2016. The motion for leave to file a motion for a new trial was denied as untimely; thus, it is not a properly filed application and cannot provide statutory tolling. *See Pace,* 544 U.S. at 414.

Assuming Mr. Lawrence is entitled to three days of statutory tolling, the one-year period of limitations expired on August 8, 2017. Though Mr. Lawrence unsuccessfully pursued several other avenues for postconviction relief in the state courts after this date, they do not render his habeas petition timely. Tolling serves to pause a clock that has not yet fully run; it does not "revive the limitations period" or "restart the clock." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Absent equitable tolling, Mr. Lawrence's petition is untimely.

**B.  Equitable Tolling**

AEDPA's statute of limitations is not "an inflexible rule requiring dismissal whenever its clock has run" and is "subject to equitable tolling." *Holland v. Florida*, 560 U.S. 631, 645-46, 649 (2010) (internal quotations omitted). A habeas petitioner is entitled to equitable tolling only if he shows (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 560 U.S. at 649.

Mr. Lawrence claims he meets the criteria and is entitled to equitable tolling. He notes in support of his diligence "an exhausting list of prior civil, criminal, appellate, and extraordinary writ actions diligently litigated . . . since being initially convicted until the instant habeas action . . . ." (ECF #1-3 at PageID 20). As for extraordinary circumstances, Mr. Lawrence takes issue with the

Eighth District's decision not to address the additional errors asserted in his *pro se* supplemental brief on direct appeal. (*Id.* at PageID 22). He emphasizes the Eighth District's order granting his motion to file the supplemental brief and his reliance on that order, stating it "provided [him] with the opportunity to present the additional four assignments of error which he adamantly wanted to raise." (*Id.* at PageID 22). Had Mr. Lawrence known the Eighth District would not address the *pro se* claims, he claims he would have fired his appellate attorney and hired a different attorney to present those additional errors on direct appeal. (*Id.*). After considering Mr. Lawrence's arguments and the applicable law, I find Mr. Lawrence's untimely petition is not saved by equitable tolling.

First, in relation to the unaddressed *pro se* claims, Mr. Lawrence was not reasonably diligent in pursuing an appeal to the Supreme Court of Ohio. His own freely admitted misunderstanding of appellate procedure, including what documents are necessary to properly file a notice of appeal in the Supreme Court of Ohio, caused his inability to submit a timely appeal to the state's highest court. (*See* ECF #8-1 at PageID 295-96). After the state supreme court denied the motion for delayed appeal and dismissed the case on February 18, 2015, Mr. Lawrence inexplicably waited 20 months before filing a motion with the Eighth District on November 7, 2016, requesting that court decide the additional arguments from his *pro se* supplemental brief.

After the Eighth District denied that motion on November 10, 2016, Mr. Lawrence did not pursue further appellate relief on the alleged errors for nearly two years, filing a second application to reopen the direct appeal under Ohio App. R. 26(B) on November 1, 2018. Perhaps most damaging to Mr. Lawrence's position is the passage of another year between the Supreme Court of Ohio's dismissal of his last pending appeal on October 12, 2021 (*See* ECF 8-1 at PageID 581), and the filing of his federal habeas petition. *See Black v. Warden, Lebanon Correctional Inst.*,

No. 1:12-cv-821, 2013 WL 3811774, at *7 (S.D. Ohio July 19, 2013) (holding that petitioner was not reasonably diligent where he unsuccessfully attempted to perfect a timely appeal to the state's highest court, waited three months before unsuccessfully attempting to file a delayed appeal, waited two months thereafter before successfully filing for a delayed appeal, and filed the federal habeas petition over nine months after the Supreme Court of Ohio dismissed the delayed appeal), *report and recommendation adopted*, 2013 WL 4067818 (S.D. Ohio Aug. 12, 2013).

To the extent Mr. Lawrence alleges his ignorance of the law and procedure constitutes an extraordinary circumstance, he is mistaken. The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling." *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Allen v. Bell*, 250 Fed. App'x 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. App'x 783, 789-90 (6th Cir. 2015); *see also Keeling v. Warden, Lebanon Correctional Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Finally, we note that Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing."). The record does not support Mr. Lawrence's assertion that he was reasonably diligent in pursuing his claims.

Next, while the Eighth District granted Mr. Lawrence's motion for leave to file his supplemental brief on direct appeal, that court's failure to address his *pro se* claims is not an extraordinary circumstance that prevented him from filing a timely federal habeas petition. Ohio law does not allow a defendant to be represented by counsel and simultaneously to act as his own counsel. *State v. Martin*, 816 N.E.2d 227, 232 (Ohio 2004) ("Today we reaffirm and hold that in Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and

may not be asserted simultaneously."). In its decision adjudicating Mr. Lawrence's motion to reopen the direct appeal, the Eighth District determined that the *pro se* assignments of error were "properly ignored," and cited supporting cases where the appellate court disregarded assignments of error raised in *pro se* briefs because the defendant was represented by counsel. (ECF #8-1 at PageID 479-80; *see also State v. Lawrence,* Nos. 100374, 100387, 2019 WL 193904, at *2 (Ohio Ct. App. Jan. 8, 2019)).

Mr. Lawrence likens his case to *Ogle v. Johnson,* 696 F. Supp. 2d 1345 (S.D. Ga. June 29, 2009), where the district court determined it would review four of the petitioner's claims *de novo* because the state habeas court addressed just three of the seven claims properly before it. Setting aside the questionable persuasiveness of a district case outside of the Sixth Circuit, I find *Ogle* distinguishable from the circumstances here, primarily because the petitioner presented all seven claims *pro se. Id.* at 1351. Here, Mr. Lawrence's counsel presented three claims and he, *pro se*, asserted additional assignments of error. Although Mr. Lawrence may not agree with the state courts' decision to disregard the *pro se* claims, under established Ohio law the Eighth District was not obliged to address them and the failure to do so does not warrant *de novo* review in this Court.

Mr. Lawrence has not shown reasonable diligence in pursuing his claims and has not identified an extraordinary circumstance that prevented him from timely filing his federal habeas petition; therefore, he is not entitled to equitable tolling.

### C.    Actual Innocence Exception

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court held that a petitioner who asserts a credible claim of actual innocence can "avoid a procedural bar to the consideration of the merits of his constitutional claims." *Id.* at 327. Based on *Schlup*, the Sixth Circuit has held a

petitioner who presents a credible claim of actual innocence is entitled to equitable tolling of the AEDPA's statute of limitations. *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005) ("where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims"). The exception is rare and only applied in extraordinary cases. *See Schlup*, 513 U.S. at 321; *see also Souter*, 395 F.3d at 590.

To demonstrate a credible claim for actual innocence that would allow a court to consider a time-barred habeas claim, a petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup*, 531 U.S. at 316. The threshold inquiry is whether "new facts raise sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* at 317. The petitioner's evidence must include "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Although the examples of new evidence cited in *Schlup* "were not meant to be an exhaustive list of everything upon which an actual innocence claim may be based," *Souter*, 395 F.3d at 595 n.8, "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted).

If a petitioner presents new reliable evidence to support a credible claim of actual innocence, the federal court must consider the fully developed record and the new evidence. *Schlup*, 531 U.S. at 329. "Based on this total record, the court must make 'a probabilistic

determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 531 U.S. at 329). After reviewing all the evidence, if "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," the petitioner is entitled to a review of the merits of his underlying constitutional claim. *Schlup*, 531 U.S. at 327.

The standard is difficult to meet. Supreme Court and Sixth Circuit case law provide illustrative examples of the amount and kind of evidence necessary to meet this high burden. In *Souter,* the Sixth Circuit held the petitioner met the actual innocence standard where the petitioner presented compelling proof that a bottle – the only direct evidence linking him to the death – could not have caused the victim's injuries. *Id.*, 395 F.3d at 596-97. Notably, the Sixth Circuit relied on evidence in the form of affidavits from trial witnesses who retreated from or recanted their original testimony, a report from a forensic scientist who examined the bottle and autopsy photos and found no sharp edges or protuberances that could have caused the wounds shown in the photos, and photos of the victim's clothing that were unavailable at trial. *Id.* at 590-92. The victim's clothing, allegedly covered in blood, contradicted the State's argument that the absence of blood on Mr. Souter was consistent with the absence of blood on the victim. *Id.* at 592. This evidence, taken together, chipped away at the slim circumstantial evidence on which Mr. Souter was convicted. *Id.*

In *House*, the Supreme Court concluded the petitioner satisfied the standard by putting forth evidence that called into question the central forensic proof (blood and semen) that connected the petitioner to the crime and substantial evidence pointing to a different suspect. 547 U.S. at 540-54. The Court noted this was a close case, acknowledging that some aspects of the

state's evidence still supported an inference of guilt, but the existence of evidence undermining the forensic proof, and the petitioner's production of evidence from multiple sources suggesting that the victim's husband regularly abused the victim, were sufficient for the Court to conclude that, had the jury heard all the conflicting testimony, it was more likely than not that no reasonable juror viewing the record as a whole would have found the petitioner guilty beyond a reasonable doubt. *Id.* at 553-54.

Here, Mr. Lawrence claims entitlement to equitable tolling based on the actual innocence exception but the evidence he presents in support of his claim pales in comparison to the nature and quality of the evidence presented in *Souter* and *House*. (ECF #1-3 at PageID 24). In support, Mr. Lawrence relies on the purported statement of an unnamed former police officer involved in the investigation who claims two eyewitnesses independently identified the same suspect from photo arrays, but Mr. Lawrence was not the individual the eyewitnesses identified. (*Id.* at PageID 26). According to Mr. Lawrence, the unnamed police officer stated, "Because Howard Lawrence had already been charged with crimes stemming from the DeAngelo Chandler shooting incident, a decision was made to simply destroy the evidence obtained from the [eyewitness] interviews." (*Id.*).

Though Mr. Lawrence claims the unnamed former police officer's statement was obtained through a private investigator in the summer of 2022 (*Id.* at PageID 24), he did not attach an affidavit or sworn statement from the private investigator memorializing the former police officer's alleged admission. Without such documentation, all that remains is Mr. Lawrence's unsupported assertion that this evidence exists. Because Mr. Lawrence has not presented reliable evidence supporting a credible claim of actual innocence, he cannot satisfy the demanding standard necessary to support equitable tolling of his untimely petition.

CONCLUSION AND RECOMMENDATION

Mr. Lawrence filed his federal habeas petition more than five years after the one-year statute of limitations expired, even after applying three days for statutory tolling. He has not shown entitlement to equitable tolling, either by showing reasonable diligence in the pursuit of his claims and the existence of an extraordinary circumstance that prevented his timely filing or by supporting a credible claim of actual innocence with reliable evidence strong enough to undermine the Court's confidence in the outcome of the trial. For the foregoing reasons, I recommend Mr. Lawrence's habeas petition be **DISMISSED** as untimely.

Dated: November 17, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl,* 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green,* No. 1:17-CV-00186, 2018

WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard,* 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega,* 924 F.3d 868, 878-79 (6th Cir. 2019).